The purpose of the business, since I am moving, you are in charge. Can you handle this? Assuming you can, I'd like to move the admission. Please stand, Ms. Robinson. I'd like to move the admission of Laura J. Robinson, my law clerk, who is a member of the bar in very good standing of the highest court of the District of Columbia. And I've worked with Laura, as I think both of you have, and I have the highest opinion of her credentials, and I'm satisfied she'll make great contributions to our bar. I move her admission. Is this a close call? Not because of Laura, because of the movement? That's a different problem. In light of who it is, we're more than delighted to consider this motion. May I assume, sir, that you concur in the motion? You don't have to assume. I do concur. Excellent. In that case, I do also, and the motion is granted. You will now be sworn in. Do you solemnly swear or affirm that you will conform yourself as an attorney in the House or this Court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Welcome to the Bar of the United States Court of Appeals for the Federal Circuit. Thank you. Our first case this morning is Lupin v. Abbott Labs, or are we Abbott Labs v. Sandoz? Which one are we doing first, Mr. Director? What's that? It's Lupin v. Abbott Labs. Lupin. All right. You may proceed. May it please the Court, my name is Jim Hurst, and I'm arguing on behalf of both Abbott Laboratories and Estella's. There's two claim construction issues on appeal relating to the terms obtainable by and crystalline, and I wanted to start with obtainable by, which is the term used in claims two through five of our patent directed to crystalline septonere, obtainable by, not obtained by, obtainable by. Do the process steps count? The process steps count only in the following way, Your Honor. Our claims cover only crystalline... If they don't count, why do you need four claims? They do count in the following way. Our claims cover crystalline septonere only if it is in fact obtainable by those various processes. So if, for instance, a competitor sold a crystal that was not obtainable by claim five... Is it a product patent or a process patent? The claims two through five, I think, are considered product claims... So you have that product by any process by which it's made. Is that correct for a product claim?  That's the black law letter as I've written it in four books. Nobody's ever questioned it. If it's a product claim, you have it by whatever process it's made and for whatever use it may be put to. We defined it in plain language as the only products that are obtainable by those processes. For instance, claim five... So the process counts? The process counts, but only in defining what product is covered. What do you mean only? That's the whole ballgame. Here's an example. Say a competitor out there sells a crystal that is in fact obtainable by the processes in claim two. But they don't actually use that process. Is that crystal covered? The answer is yes. Because they are selling a crystal that is obtainable, capable of being obtained by the process in claim two. So you get to count the process to avoid validity problems, but you get to ignore the process when it comes to infringement and thereby have a broad claim, and moreover have a claim to something which was old. I don't think that's quite correct, Your Honor, because we would count the process for both anticipation and both invalidity and infringement. For instance, if there was a patent out there that taught this process to make a crystal, that would be an anticipatory reference because it taught the process to make a crystal, and that crystal is therefore disclosed in the prior art. You rely heavily on Scripps Clinic, don't you? Well, we do. I think we rely more heavily... What was the claim to in Scripps Clinic? It was a blood clotting factor prepared in accordance with certain processes. What is the claim to? I've got it in front of me. Read it right out of the claim, right out of the case. It's to human factor 8C, right? Right. Was that an old or a new product? I think in that case it was a new product. How could it have been? Because the Scripps Clinic case itself says that it was already in use. It was already the treatment for hemophilia. And so the interesting thing about Scripps Clinic, isn't it, is that they were trying to use the new process of obtaining factor 8C to get a product claim on something which was already in use and had been for decades. So it is exactly the problem that you describe and criticize in your brief as trying to get a claim to an old product by just new process steps. No, I don't think that's at all true, Your Honor. Well, can you please show me how it's not true with Scripps Clinic? Let me try to explain the context of this case. No, I want to talk about Scripps Clinic because that's the linchpin of your case. Actually, the linchpin of our case is Phillips. Let me try to, if I could. Thank you for not answering my question. I'm sorry. You tell a lot by refusing to answer my question. No, I don't mean to. I think you don't have an answer when you don't answer. My understanding of Scripps was there was two separate issues. There was the infringement issue and there was the invalidity issue. On the infringement question, the panel in Scripps held. Can you show me how that was not a claim to an old product? It claimed a product 8C patent by a new process. But the product factor 8C, we can start with paragraph 2 of the opinion. The scientists succeeding in concentrating the factor 8C in plasma, the concentrate had been used to replace transfers of whole blood and the treatment of hemophilia. It goes on and on. It had been in use for decades. It seems to me that if it was an old product and you were not counting the process limitations to distinguish the old product, that is an invalid patent. Thank you. I apologize if I was being unclear. Why don't you speak to Judge Bryson's? I was just going to ask a question, which I think is what you were going to say about Phillips. As I understand it, your position here is that, yes, there's Scripps and, yes, there's Atlantic Thermoplastics, but you don't have to resolve the tension between those two cases in this case because you have the word obtainable, which falls outside of the dichotomy, which is created by Scripps and Atlantic Thermoplastics. Exactly. But here's my problem with that, which is I understand that this is a somewhat subtle point, the distinction here, but as I read your submission to the district court, and this is dealt with in the briefs, I didn't see you as presenting that third option to the district court, at least in clear terms because your presentation was in the context of Scripps, Atlantic Thermoplastics, pick one, and you pushed for Scripps. I didn't see you saying to the district court, at least not in the clear form that you have said to this court, that there is a third option and that is this falls outside of either of those because the word obtainable is different from the word obtained, which is I think the argument that you're principally pressing here. I think, Your Honor, we did argue that Scripps out of control because it was under the prior precedent rule it out of control. We also said and cited the same dictionary down below. We said to the district court in our briefs, in our Markman briefs, in our claim construction chart, at the argument, we said the same thing. I've read that, but in each of the places, there are two pages that you pull out of the Markman and there's one page, JA 794, that you cite also. But each place, it strikes me at least, and you can correct me if this is a misapprehension, but it strikes me that that's all in the context of why this is a Scripps type case and ought to be analyzed under Scripps. If I were the district court, let me put it this way, and then you can answer and I'll be quiet. But if I were the district court, I would not have understood your argument to be anything more than this is either Scripps or it's Atlantic Thermoplastic. We think it's Scripps. You decide, and the district court did. The district court decided this was an Atlantic Thermoplastics governed case. I hear what you're saying, but throughout, we argued that the plain language of these claims ought to apply. We cited Webster's for the definition of the term obtainable. And Webster says it's capable of being obtained. And that is all we're saying, that the plain language of these claims ought to be respected. And we did say that to the district court. In fact, during the Markman hearing itself, we twice argued to the district court, this term obtainable by, it's not a tricky term. It's not a technical term. It means capable of being obtained. That's all it means. And that's different, by the way. The claims here are very different from the claims that were at issue in Atlantic and Scripps. Because obviously, in Atlantic, it was the inner soul, the molded in soul produced by the method of claim one. Not producible by, not obtainable by. And in Scripps, it was similar language. It was the blood clotting factor prepared by, or prepared in accordance with. Not possibly, not obtainable by that process. Actually prepared. You can understand the dilemma in those cases. Look, a natural reading of those claims, I completely agree. A natural reading of the claims that were at issue in Scripps. What did you invent in this case? A brand new crystal. We invented, there was... Something that never existed before. Absolutely, Your Honor. And why didn't you claim it in those terms? We did claim it in those terms. That's what we're saying here in this appeal, that we did claim it in those terms. We claimed... Structurally? We claimed it two ways. We claimed a... In claim one, we claimed it structurally. A generic crystalline seftonere that has these seven peaks. In claims two through five, we said, we claim generically crystalline seftonere, obtainable by any of the processes in claims two through five. Your Honor asked whether we're playing both sides of the fence. Different rules for infringement versus anticipation. Just let me be really clear. If the prior art disclosed any crystal, regardless of how it was made in the prior art, regardless of how it was made, that could have been obtainable through one of our processes, our patent would be invalid. We are absolutely applying the same rules for anticipation and infringement, and we think the plain language avoids the tension between Atlantic and Scripps because we have a very different claim here. This court has written many times, even in the context of the Atlantic versus Scripps debate, many times, you can't ignore the claim language. You can't do it. Don't ignore the claim language, which arguably was being done in Scripps conceitedly because you read that claim, you think the process is part of the claim. But here it's the opposite. The natural reading of our claim is not that the process is required to prove infringement. The only question is, is it a crystal that's capable of being obtained by one of the recited processes? I see that I'm running short on time here. So you used the process to narrow the claim for validity, and it doesn't count for infringement? We used the process to narrow it. It counts both ways. So if they don't use the process, if they use a cooling instead of a warming process, they don't infringe? They infringe still. And by the same token, Your Honor, So in other words, the process of warming narrows the claim for validity so that you avoid any implications, and yet it doesn't count for infringement? See, here's why I disagree, Your Honor. Say in the prior art they used cooling rather than warming, but what they obtained was a crystal that was obtainable by one of our processes, regardless of how they did it. So clearly we are applying the same rules on both anticipation and on infringement. I didn't even get to crystal yet. My question is this. Should I sit down and reserve my two minutes and 30 seconds? Your choice. I'll reserve my time. Thank you, Mr. Hurst. Ms. Mazzocchi? Thank you, Your Honor. May it please the Court. I think that what Mr. Hurst said is that the process, well, first, there's no dispute that sefton air is an old product. Claims two through five each describe sefton air. Does the crystal inform an old product? Yes. In the 334 patent, which was the prior art patent to the 507 patent, example 14 in that patent specifically described the preparation of the compound sefton air and said that the material that was produced was crystals. Crystal B, right? It turns out that after we've reproduced the examples, we know that it's the crystal B today. But back then, we didn't know what crystal form was in there because they didn't provide all the specific details on it. But we know that it was crystals. In fact, when you look at the original laboratory notebooks that gave rise to this example, it said that it produced crystals. But they make crystal A. Right. So it's a valid new product, right? Well, what they're saying, of course, is that they're not saying that Lupin's product, which is made by cooling, is crystal A. They're saying they've conceded in their briefs that Lupin's product is crystal B, which actually in their Japanese priority documents, they conceded that crystal B is made by cooling. It's not made by warming. Crystal A is made by warming. So here, when you look at the 507 patent claims two through five, every single one of those claims is directed towards crystals that are made by warming or at room temperature. Does those cover A and B? No, I don't think that they do because there's no evidence in the record that you can follow the process steps that are set forth in the 507 patent and get, for example, Lupin's product. You can't get a product that's identical to Lupin's product. Now, what they've done here is they've said, well, we found a declaration from someone who said, I can further manipulate those process conditions in the 507 patent, get what I think is a different type of crystal. And they've said, well, that crystal has something in common with another crystal that we're going to call monohydrate, and we're going to say that that crystal has some features in common with the Lupin sample. So we're going to play this game of crystal telephone, and we're going to say that the Lupin crystal is somehow the product of the process of the 507 patent. But I just think that that's an absurd result here because the Lupin crystal product has never been made, and they've never shown that the Lupin product can be made by following the process steps that are set forth in the 507 patent's claim two through five. And I think that if they're going to look at these process claims and say, you know, they've got two options. They're either discretionary, and in which case if they are discretionary, then there's no difference between claims two, three, four, and five. They all read crystal and septonere, crystal and septonere, crystal and septonere, crystal and septonere. If they're going to say that these process steps have meaning towards defining the product that is produced by the process, well, then we're squarely back within the scope of Atlantic and the whole line of Supreme Court cases that say, yeah, if you've got an old product and you're using the manufacturing or process conditions to define the product that is actually made, then you have to prove infringement of those process steps or prove that the accused product could not be made by any way but for following those process conditions. And that simply hasn't been done here. There's been no testimony introduced into the record that Lupin's crystal made by cooling is the same thing or equivalent to crystallizing under warming. Do those old Supreme Court cases control this? I think that they do. You have an identical fact scenario here. I mean, for example, the BASF case that dealt with the- What do we do with Scripps Clinic? Well, I think that Scripps Clinic- Well, the first problem, I think, with Scripps Clinic is Scripps never really faced the question of how are we actually going to conduct the infringement analysis by ignoring the process limitations? Because, again, I think as you pointed out in Atlantic, claims are what are infringed. You don't infringe a product. You have to infringe the claims. So if you're going to start divorcing the infringement analysis from the claims, you're not going to have anything to infringe. You can't infringe a product. So I think that the panel in Scripps was not faced with the question of if we jettison these process elements, how is it that we're going to do the element-by-element analysis? Because if you're going to just say, here's a blood clotting protein- The language of Scripps is very clear. It says the process steps don't count. Now, are you asking us to ignore our own precedent? I don't think that you need to ignore precedent. I think that Judge Newman stated in a later decision that the scenario that she was contemplating that the patentees had in Scripps was one where the product could not be defined by any way but for the process by which it was made. So if you wanted to take the view that those claims were directed towards a completely new product, that was the approach that she was trying to take there. She also suggests that cases like this one and perhaps Atlantic Thermoplastic aren't really product-by-process claims in the technical meaning of that term, but they're something else. Right, and I think that if you look at the facts here, that's why they much more closely mirror the situation in Atlantic and in the prior Supreme Court cases. Because what we have here is just as in Atlantic, they had a molded intersol. Here we have an old product, which is septaneer. And in Atlantic, they said here's a way in which we can use process conditions to make this product. Okay, that's all they've done here is they've said, you know, whether they want to call them discretionary process conditions or not, they've said here's a list of process conditions that can be followed to make this product. You know, Judge Newman also made a suggestion that when you have some claims that are drafted in this kind of format, it can also be drafted to try to deal with importation issues. You know, so the original patentees on this product, they were a Japanese company. It could be that they were concerned that somebody might be practicing this process for making this unique crystal A overseas and trying to import it. You know, and that's also one of the situations where the process limitations, again, would be considered to be a part of the claims. I'm a little confused, and I don't want to get tied up in nomenclature here, but is it your position that this claim is a product by process claim? Well, it's been our position that when the person of ordinary skill in the art reads this claim, you're going to see that it's a process-driven claim. Process-driven. Let's get more precise as to exactly what you mean the claim requires and where that fits in the nomenclature of different claims. Right. Well, our original position before the district court was that you shouldn't even construe these as product claims. You should construe them as process claims, because when you look at how these claims are presented and how they're developed, the thing that is different about them is the process steps. It's the process steps, you know, in claim two. It says, you know, prepare this product. When you say process steps, let me make sure I'm on the same page with you here. You're saying that if your client does not prepare this product by this designated process, you don't infringe, even if the product, setting aside claim one, even if the product is absolutely crystalline. Well, first, there's no evidence in the record that our product is crystalline. I understand, but there's evidence to have some crystalline. You would say that there's, even if you've got crystal A, you don't infringe. Right. Hypothetically, if somebody wants to go out there and make crystal A, and they do it by avoiding the process steps that are set forth in claims two through five, they don't infringe because they haven't satisfied each and every element of the claim language. Well, that would be true. Again, we get back to the obtained versus obtainable problem. This is not the classic, what was the language, prepared, I guess, in script, right? Right. It's a slightly different term. And the argument, what is your response to the argument that this use of the term obtainable takes this out of the scripts Atlantic thermoplastic type of classic product by process? Well, I think that if, as counsel suggests, they want to say there is, I mean, to me, it's literally an unprecedented claim type because what you're essentially saying is we have a product by discretionary process claim. So if you are going to, I mean, it's the only thing. Well, no, I think, I don't want to put words in their mouth, but I think what they would say is this is a product, which is defined in part by the fact that it is capable of being made by the following process, although the product, if made by a different process, that product which is capable of being made in this way, if made by a different process would nonetheless infringe. Right. So, I mean, if that's what that language imports to a reader, what's your answers to why you don't infringe? Well, I think that it becomes a nonsensical claim because what you are essentially saying is that I can, I mean, first I don't... Is there a definiteness problem with that? Well, yeah, because I don't think you could possibly say that any product is going to be identical to whatever is capable of being obtained by this process unless you've actually followed the process to get there. Are you arguing in response to Judge Bryson, are you saying that if what Claim 2, 3, 4, 5 mean is that it's a product by any process, this process or any other, it's no different from Claim 1? Is that your point? Well, I think the better way to say it is there's no distinction amongst Claims 2 through 5. What is it that you're claiming? And then you get back to the old product, which is the seftonere. The seftonere is an old product. So if you're going to say that these process steps are somehow conveying a new product feature on seftonere, then I don't see how you can eviscerate those process claim elements to say now I can... You later suggested a moment ago there might be an indefiniteness problem. Is there also, if we construe it that way, is there also a problem with written description? Absolutely. Absolutely. Because look at the situation that we have here is that they knew when they filed their 507 patent application that there were two different kinds of crystals that they had identified. One they called Crystal A, one they called Crystal B. Crystal A, they said you get that by warming. Crystal B, you get that by cooling. And if you want to talk about what is the notice function that the claims are going to serve, when they take that specification, they come forward into the United States. They direct all of their disclosure to Crystal A. They say that the way in which you make this crystal is through these warming conditions and the other ones that are set forth in Claims 2 through 5. And they put in nothing about Crystal B. Is it really going to serve the notice function of the claims? Have they really provided a proper specification? If they then try to do what they've done here and suggest that Lupin making this Crystal B product that they knew about all along, that somehow gets to fall back into the scope of Claims 2 through 5. So again, that's why I think that it's essential here that they be held to the claims that they chose. Now if they wanted to come up with some other crystals that they thought could be prepared, the way to do that is to put a disclosure into your specification or to at the very least say I hereby claim all septonere crystals or septonere crystals made according to process A, B, C, or D. But to start saying, well, hypothetically, we want an intent to claim some crystal that somebody else might come up with. Here they're relying on a declaration that came about 10 years after they filed the original patent application. That's not serving the public notice function of the claims. It's an improper attempt to expand the claims. And that's why I think that when you are looking at the infringement question here, you have to stay focused on the claim language. Because to do anything else is to essentially say you're going to be infringing a claim based on doing a product to product comparison. And I think that's completely not supported by this court's precedent. You argue in your briefs, and I asked your opposing counsel about this, that the argument about obtainable versus obtained wasn't really presented to the district court. That's correct. When you look at their original Markman submissions to the court, and I think we reproduced that chart in our brief, when they said, Judge, please construe claims 2 through 5 and what it means to be obtainable by these process steps, all that they said is claims 2 through 5 should be construed as product by process claims. And then they went on to argue that the reasoning set forth in scripts is what should govern the ultimate infringement analysis. There was never any distinction made that somehow the word obtained versus the word obtainable is going to somehow magically transform the scope of the claims so that you can go beyond Atlantic in scripts and that this is representing some new type of hybrid claim that's never been made. Well, to be fair, though, and I think Mr. Harris pointed this out, at least during the Markman discussion and at one point during the Markman briefing, I think, as well, there was discussion of the term obtainable by. And in fact, the statement was made that is a term the patent office has specifically recognized as creating a product by process claim, talking about product by process, but then going on and saying it's not a technical term, it's simple English language, which has been defined as simply capable of being obtained. So I suppose one could read that as saying, well, it's all within the umbrella of product by process, but it is to be viewed in a way that's consistent with what we're now calling the Phillips-based argument outside of the strict dichotomy between scripts and Atlantic Thermoplastics. My question to you is why shouldn't we, in light of this language, view their presentation as encompassing that third option? Well, first, they never presented that as a third option to the district court, so we certainly never had the opportunity to respond to it. But furthermore, I don't even think that if you read Phillips that... Well, Phillips is just sort of shorthand for the notion that just looking at the language, does this word obtainable look like it points in a different direction from the word obtained? Right, and I don't think that it does, because when you look at the intrinsic evidence, for example, in the 507 patent, it never suggests that you can follow these process conditions and get any other type of crystal besides crystal A. The only crystal form that is obtained by following these process conditions is crystal A. There's nothing in the specification that would indicate that you can follow these process conditions and get another crystal, or that you can even get crystal A by following some other process condition. I would have thought you might have answered that if obtainable by doesn't mean obtained by, then it has all the problems that we were talking about before, so the only way to save those claims is to read them to be obtained by. Right, and I think... I would have thought that might have been a partial answer, too. Well, I agree. Unfortunately, I'm also over my time, so I'm trying to be as fast as possible. But I think we did make that point in our brief, which is that if you start saying obtainable can mean anything, then you simply don't have anything in the specification that's going to support that that was considered to be part of the invention, and you have no written description for anything above and beyond that. Thank you, Ms. Misucci. Would you restore all of Mr. Hurst's story of bubble time so he'll have four minutes remaining instead of two? Thank you, Your Honor. That'll make things... Mr. Hurst, if we look back at the Japanese priority document, it claimed both A and B crystals, and your U.S. application focuses in on the crystal A. Should we recognize that as kind of a surrender of the subject matter of Claim B, which is what is practiced by the defendants? The defendants actually have A and B, but the answer is no, Your Honor. This is not... When you look at the prosecution history to try to determine whether there has been a disavowal of claim scope, you're looking for a clear and unmistakable surrender. For instance, we didn't have a situation where we were amending our claims in response to a rejection, which is the traditional way that you have a clear and unmistakable waiver. Here, we have a situation where we proceeded forward with our best mode, which is required in the U.S., our preferred embodiment, our commercial product. That's what we focused on in our application. To look at a Japanese... But your claims are not your best mode. Your claims are your claims, and you chose to write those claims in a certain way, and you chose to write your written description in a certain way. And that certain way seemed very much focused on crystal A. In fact, the one thing that... That isn't... I don't know how much more clear and unarguable a giving up of other stuff that I can imagine, unless you had said, oh, we don't ever mean crystal B either. Well, we talked about crystal A in the specification for sure, Your Honor. And it was our preferred embodiment. It was the best mode. It's a U.S. requirement. Different rules in Japan. Entirely different prosecution rules in Japan. So that application was operating under a different framework. And then after talking about crystal A... Nothing requires you to narrow your claim to the best mode, however. No, and we did not. Our claims are generically referring to crystal. If you were to replace crystalline with crystal A, which is what the district court did, just imagine the redundancy that you create. Because for every single claim, the limitations that follow... Where is it that your specification gives us some sense that you are claiming crystal B as well? The fact that we haven't redefined the word crystalline. Crystalline is a generic word. Everybody understands what it means. We used crystalline in the spec. We used crystal A in the spec. And we made a deliberate choice to use the phrase crystalline in the claims. The district judge went through it quite thoroughly. Time after time, you talk about the invention of crystal A, the invention of crystal A. Crystal A is the invention. We do talk about crystal A of the present invention. And that denotes a subset. You talk about it the other way. You say the present invention is crystal A. We do not actually ever say the present invention is crystal A. We say it the opposite way. Crystal A of the present invention. I am Jim Hurst of Winston and Strachan. There's 900 of us. I wouldn't say I'm Jim Hurst of Jim Hurst. And we did intentionally choose the word crystalline really quickly in a couple of issues. In terms of whether we made this argument below, interactive. We cite it in our briefs in the reply brief. Waiver occurs when you change the scope. Not when you defend the same scope you defended below in a different way. And I don't think we did defend it in a different way, Your Honor. All we said was, Scripps got it right. This is how you read product by process claims. And in this particular instance, if you look at 0794 and the following page, we not only refer to the dictionary definition, Webster's, but we also talk about the fact that the prosecution history is consistent with our reading because it talks about the heart of the invention. Counsel said there was no evidence that their product was obtainable by our processes. I refer you to JA112 and JA1106-7. There is, in fact, such evidence. And I'm going past my time. Invalidity. I think you'll get some more time in the next case, Mr. Hurst. But do you have a final thought? Please give it to us. There was some discussion about whether our claims, if construed the way we would like them to be construed, would be invalid. That's an issue for another day. Invalidity is the last tool in the claim construction box to be used only to resolve unresolved ambiguity. Here, we think the plain language is in our favor, and it is, in fact, clear. Let me ask, if I could, just ask one further question, just to make sure we know where we are on the playing field here. If I understand your position, if we were to, let's suppose two options, neither of which you're going to like, but I'll just throw them out for you. Option number one would be to say that for whatever reason the process is part of the requirement in the sense that it has to be shown that this product was made by this process. Then under those circumstances, you would not have a basis for claiming infringement, if I understand it correctly. Correct? For claims two through five, that is correct. I'm setting aside claim one altogether. But with respect to the crystalline definition, which is entirely, well, related, but still separate issue of whether crystalline refers to only crystal A or crystal B, you still contend that you do have an infringement case based on the trace presence of crystal A in the accused product, correct? That's correct. So it does matter as to whether this case gets decided. Assuming it gets decided against you, it matters quite significantly on which ground, correct? That's true. Okay. Thank you, Mr. Hurst.